**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL E. MUNSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 12 C 07566 |
| v. | ) |
| | ) Judge John J. Tharp, Jr. |
| NEDRA CHANDLER, Warden, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Michael Munson is imprisoned at the Dixon Correctional Center, serving a forty-year sentence for possession of a controlled substance with intent to deliver. Munson was convicted in 2003 after a jury trial in the Circuit Court of LaSalle County. He now petitions for a writ of habeas corpus under 28 U.S.C. § 2254. In his *pro se* petition, Munson raises three categories of arguments supporting his petition for habeas relief. For the reasons set forth below, the Court denies the petition for a writ of habeas corpus and declines to issue a certificate of appealability.

## I. BACKGROUND

In a federal habeas case initiated by a prisoner in custody pursuant to a state court proceeding, the state court's factual findings are presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012). The facts that follow are therefore primarily drawn from the state appellate court opinions on direct and post-conviction appeal. *People v. Munson*, No. 3-04-0703 (Ill. App. Ct. Jan. 10, 2007), Dkt.11-1; *People v. Munson*, No. 3-08-0803 (Ill. App. Ct. Mar. 3, 2011), Dkt. 11-2. Certain procedural facts are also derived from Munson's pleadings and transcripts of state court proceedings. Assertions that

Munson offers to controvert these facts are presented, as relevant, in the discussion of the claims he asserts in his petition.

## A. Factual Background

In June 2002, City of LaSalle police officers suspected Munson of being involved in drug activity. They believed that he was hiding evidence in his home and businesses, Ottawa Glass and M&M Adult Video. Based on an affidavit that stated that Munson was implicated in a 1998 drug transaction and that his wife had informed the police that he was using his businesses for drug transactions and had been arrested for cocaine possession, the state trial court issued a warrant that authorized the police to search Munson's home and businesses, and to seize cocaine and any items or documents "used in the manufacturing, packaging, processing, distribution, sale or consumption of cocaine." Before police searched Munson's home, his mother gave them permission to search the garage at her Ottawa home. There, officers found a department store shopping bag that contained several clear plastic bags containing cocaine. The total amount of cocaine seized from the garage was between 990 and 1011 grams. The cocaine was cut with a mixing agent, inositol powder, and packaged for delivery and sale. Munson's fingerprints were on the shopping bag and the plastic bags. The officers then searched Munson's residence, where they found a key in a bedroom used by Munson and his wife, Valinda. Valinda gave the officers permission to take the key, which opened Munson's mother's garage. When searching Munson's businesses, police found multiple bottles of inositol powder, two electronic scales, and four boxes of clear plastic sandwich bags.

## B. Trial Proceedings

Munson was arrested and charged with possession with the intent to deliver. He was arraigned on June 26, 2002, at which time the State informed the court that Munson was being

held in Grundy County on separate charges. The parties agreed to refrain from further proceedings until the Grundy County charges were resolved. Munson remained in the custody of Grundy County for about a year, until June 12, 2003, when the Grundy Charge was dismissed *nolle prosequi* due to the unavailability of a witness. On June 20, 2003, Munson appeared at a status hearing on the LaSalle County charge; a trial date was set for September 23, 2003. At the next status hearing on August 15, 2003, Munson's attorney moved to withdraw with no objection from Munson. A public defender was then appointed, who appeared with Munson on August 21, 2003; a new trial date was set for October 27, 2003. At a pretrial hearing on October 23, 2003, his public defender moved to withdraw due to a conflict of interest. The motion was granted and a new public defender, who was present in court, was appointed. The new public defender, Munson's third attorney, asked for thirty days to prepare for trial. The court agreed and set a status hearing for three weeks out. Munson indicated that he wanted an earlier trial, and the court took a brief recess so that Munson could consult his newly appointed counsel. When the hearing resumed, the judge informed Munson that if he wished to reinstate his speedy trial demand, she would set a quick trial date. Munson said, "Yes, please, if you could." The trial was set for November 17, 2003, and Munson made no further objections.

On October 31, 2003, Munson retained attorney Frederick Cohn to represent him. Cohn moved to substitute for public defender Reilly, indicating in his written motion that he would be ready to proceed with trial as scheduled. Munson insisted the trial date not be moved. Cohn, now Munson's fourth lawyer, filed pretrial motions to suppress and, on November 17, made an oral motion *in limine* to preclude evidence of Munson's commission of the Grundy County crime two days prior to the LaSalle County charge. The trial court denied the motions and the trial proceeded.

One of the witnesses at trial was Chicago police officer Thomas Cunningham, who testified that he had arrested Munson in a drug transaction two days before the cocaine was found in his mother's garage. Before Cunningham testified, the court instructed the jury that his testimony was to be considered only for the limited issue of Munson's knowledge and intent.

Munson's defense was to raise reasonable doubt by showing that Valinda, not he, placed the bag of cocaine in his mother's garage. He took the stand at trial and testified that he had access to his mother's garage but that he did not know about the cocaine. He denied that the items found at his businesses were used to package cocaine. He said instead that he and Lavonne Sipula, his girlfriend and employee, used the sandwich bags to make holiday gift bags, that he purchased inositol powder at GNC for use as a dietary supplement, and that Sipula used the scales to weigh mail.[1] Munson also testified that he had agreed to try to sell a vehicle belonging to his friend Robert Harris, who was incarcerated. Munson admitted that the title of the vehicle was in his name because Harris was having IRS problems. In preparation for the sale, Munson took the car to the garage at his home to have it worked on by a mechanic. Once at Munson's garage, the mechanic opened the trunk in front of Munson and Valinda. Munson went inside the house, and a few minutes later, Valinda carried a brown grocery bag inside. She asked Munson what was in the bag; he did not know. He opened it to find a white bag containing a smaller clear plastic bag holding white powder. Valinda left with the bag and returned later without it; she did not answer when Munson asked her what she had done with the bags.[2]

On cross-examination, the State asked Munson if he had ever used inositol powder as anything other than a dietary supplement. He answered that he had not, and was subsequently

---

[1] Sipula also testified, confirming what Munson said about the plastic bags and scales and stating that she had observed Munson eating inositol powder with a spoon.

[2] The mechanic also testified that while he worked on the vehicle, he saw Valinda retrieve the bag from the trunk, take it inside the house, and leave with it a few minutes later.

impeached by a prior statement that he had made to an FBI agent, in which he claimed that Harris had previously taught him how to cut cocaine with inositol power and admitted that he had done so. Munson also admitted on cross that he had seen cocaine before and that he thought the white powder inside the bag could have been cocaine. When the State asked him how many times he had previously seen it, Munson's attorney advised Munson to assert his Fifth Amendment right and refuse to answer the question. The jury was excused, and the trial court ordered Munson to answer the question. Munson was given time to consult with his attorney, and after the jury returned, he answered the question, testifying that he had seen cocaine many times in the past.

Munson also called three employees of the Ottawa Police Department as witnesses to testify regarding their prior encounters with Valinda. One detective testified that he found her nude in a hotel swimming pool; she told the detective that she was "being tormented by the people inside the mirrors of the hotel." Another officer testified that she once made statements through police dispatch that she was going to stab her husband because he allegedly took a desk from their home. Finally, an inspector testified that she had reported that "government agents were out to kill her" and that "she heals people by laying her hands on them and that God cleanses out the pollution, [] through the bleeding from her vagina."

During closing arguments, the State argued that Munson had lied when he stated that he did not know what the white substance was and then testified that he thought it probably was cocaine. The State also condemned Munson for "muddying up" Valinda. In the defense's closing argument, Munson's attorney reiterated the argument that Valinda or someone else put the bag of cocaine in the garage. The jury found Munson guilty of possession of a controlled substance with intent to deliver.

At the sentencing hearing, a federal agent testified for the State. He stated that Munson had admitted to him in an interview that he was heavily involved with Harris's cocaine business, including having been paid to oversee distribution when Harris was out of town and eventually buying the business from Harris. The agent also testified that Munson told him that Harris taught him how to dilute cocaine with inositol powder. Munson presented no mitigating witnesses at the sentencing hearing. The presentencing investigation report indicated that Munson faced pending charges for federal tax evasion, that he had no prior convictions, had never used illegal drugs, and occasionally drank alcohol. The trial court sentenced Munson to forty years in prison and ordered him to pay a street-value fine of $101,130, noting among other things that his crime was motivated by greed and that his actions seriously harmed the youth in the community.

Munson moved for a new trial, alleging ineffective assistance of counsel and asserting that his speedy trial right had been violated. At the hearing on the motion, he testified that he had met with Cohn, his trial counsel, just twice for forty-five minutes each time. He argued that Cohn had been ineffective because he did not call additional witnesses to testify regarding Valinda's mental illness, did not read the FBI statement with which he was impeached prior to trial, allowed him to testify, and advised him to assert his Fifth Amendment right in front of the jury. At a hearing on the motion, Cohn testified that Munson had not provided him with names of other witnesses. Cohn's strategy was to raise reasonable doubt by showing that Valinda placed the bag in the garage. He chose not to present more witnesses to testify as to her mental state because he thought it would be harmful to Munson; Cohn testified that "you don't look good attacking a sick person by just showing how sick they are." Ex. M, Tr. at 36:4-5, Dkt. 11-7. Cohn also testified that Munson agreed with his decision not to call Valinda as a witness. As for the FBI report, he did not specifically remember reading the report, but based on his normal practice,

believed that he had done so prior to trial particularly because he knew that the FBI agent was present for trial. He could not say for certain whether he had advised Munson not to take the stand, but thought based on his normal practice that he had. The court denied Munson's motion for a new trial and concluded that no speedy trial violation had occurred.

### C. Direct Appeal and State Post-Conviction Proceedings

In his direct appeal, Munson raised five issues: (1) he was denied his Sixth Amendment right to effective assistance of counsel because his trial attorney failed to prepare, put forth a meaningful defense, investigate and interview potential witnesses, and review discovery, and because his attorney put Munson in a bad light by advising him in front of the jury to assert his Fifth Amendment right; (2) the trial court erred in denying his motion to suppress evidence seized pursuant to a deficient search warrant; (3) he was denied a fair trial when the trial court allowed evidence of prior bad acts and the prosecutor called him a liar during closing arguments; (4) he was not proven guilty beyond a reasonable doubt because the state failed to prove the elements of "possession" and "intent to deliver;" and (5) the trial court abused its discretion by sentencing him to forty years. The appellate court addressed and rejected the merits of each of these arguments and affirmed Munson's conviction and sentence. *People v. Munson*, No. 3-04-0703 (Ill. App. Ct. Jan. 10, 2007), Dkt.11-1. Munson then filed a petition for leave to appeal with the Illinois Supreme Court, but his petition was denied. Munson did not file a petition for writ of *certiorari* with the United States Supreme Court.

Munson next filed a *pro se* petition for post-conviction relief in the Circuit Court of LaSalle County. In his petition, Munson raised a Sixth Amendment claim for ineffective assistance of appellate counsel based on his appellate counsel's failure to raise (1) his speedy trial argument; (2) his pretrial motion *in limine* regarding "other crimes" evidence for review;

and (3) arguments contesting the consideration of improper aggravating factors at Munson's sentencing. The trial court denied the petition after an evidentiary hearing.

On appeal of the denial of his post-conviction petition, the state appellate defender first filed a brief that raised Munson's ineffective assistance of appellate counsel speedy trial argument. Munson then filed an amended brief *pro se* that raised all three ineffective assistance of appellate counsel arguments that he had previously raised in his post-conviction petition. The Illinois Appellate Court evaluated the merits of the three arguments and affirmed the denial of the post-conviction petition, concluding that Munson did not suffer prejudice because appellate counsel could not be considered ineffective for failing to raise non-meritorious arguments. Munson petitioned the Illinois Supreme Court for leave to appeal; his petition was denied on November 30, 2011.

### D. Federal Habeas Petition

Construing his *pro se* federal petition for a writ of habeas corpus liberally, *see Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010), Munson asserts three grounds for relief: (1) ineffective assistance of appellate counsel (for failing to raise the three issues addressed during Munson's post-conviction proceedings); (2) ineffective assistance of trial counsel (for failing to investigate and interview potential witnesses and for undermining Munson's credibility at trial by advising him to assert his Fifth Amendment right in front of the jury); and (3) the state appellate court erred in denying his Fourth Amendment suppression claim and did not provide a full and fair opportunity to litigate it.

## II. DISCUSSION

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. AEDPA permits this Court to grant a petition for a

writ of habeas corpus by a state prisoner only if he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In order for the writ to issue, a prisoner in custody pursuant to a state court judgment must show that the state adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This inquiry is directed to the law of the Supreme Court at the time of the last state court decision on the merits. *See Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A decision by a state court is "contrary to" federal law if it applies a rule different from that established by the Supreme Court, or reaches a different outcome than that of the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002); *Kamlager v. Pollard*, 715 F.3d 1010, 1015 (7th Cir. 2013). A state court engages in an "unreasonable application of" federal law if it identifies the correct legal standard as articulated by the Supreme Court, but applies it unreasonably. *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Such an application must be "objectively unreasonable," which is more than simply "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). An objectively unreasonable decision must be "well outside the boundaries of permissible differences of opinion." *Kamlager*, 715 F.3d at 1016 (citation omitted). AEDPA requires courts to give "full effect" to state judgments that are consistent with federal law. *See Williams*, 529 U.S. at 383. This means applying a "highly deferential" standard of review, which "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

The AEDPA requires state prisoners seeking a federal writ of habeas corpus to exhaust available state remedies. 28 U.S.C. § 2254(b)(1); *Bolton v. Akpore*, 730 F.3d 685, 694 (7th Cir. 2013). In particular, a petitioner must fully and fairly present his federal claims through one full round of state review, including petitioning for discretionary review, before petitioning for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). To fairly present a claim, a petitioner must "give the state court a meaningful opportunity to pass upon" its substance by including both the operative facts and the controlling legal principles on which the claim is based. *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004); *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). A petitioner must also alert the state court that the claim raised is based on federal law. *Ward v. Jenkins*, 613 F.3d 692, 696 (7th Cir. 2010). The procedural default doctrine precludes federal review of a state court's habeas decision when "the federal issue was not fairly presented to the state courts and those courts would now hold the claim procedurally barred" or "when the state court's decision was based on adequate and independent state law." *Id.*

In its response to Munson's petition, the State of Illinois argues that this petition must be denied because (1) this Court is barred from reviewing the ineffective assistance of appellate counsel claim by 28 U.S.C. § 2254(d), because the state appellate court's decision rests on interpretations of state law that may not be reviewed by this Court; (2) the ineffective assistance of trial counsel claim is meritless under § 2254(d); and (3) the Fourth Amendment claim is barred by *Stone v. Powell*, 428 U.S. 465, 494 (1976). This Court agrees with the State's arguments and consequently denies Munson's petition.

## A. Claim 1: Ineffective Assistance of Appellate Counsel

In his first claim, Munson asserts a violation of his Sixth Amendment right to counsel, based on the ineffective assistance of his appellate attorney. He argues that appellate counsel was ineffective for failing to raise three arguments on direct appeal in state court: he was denied his right to a speedy trial, consideration of improper sentencing factors resulted in an errant sentence, and the state court erred in denying his pretrial motion *in limine* to bar "other crimes" evidence. Munson raised these arguments in his state post-conviction proceedings, where the Illinois Appellate Court decided the claim on its merits. The state court applied *Strickland v. Washington*, 466 U.S. 668 (1984), and concluded that Munson's appellate attorney's failure to raise these arguments was neither unreasonable nor prejudicial. The court evaluated the merits of the three underlying arguments and reasoned that because each would have failed as a matter of state law, Munson was not prejudiced by his attorney's failure to raise them.

The state appellate court correctly identified *Strickland* as the governing standard for Munson's claim. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *McNary v. Lemke*, 708 F.3d 905, 920 (7th Cir. 2013). Under *Strickland*, a person challenging a conviction must show (1) deficient performance by counsel, meaning that the performance fell below an "objective standard of reasonableness" informed by "prevailing professional norms," and (2) prejudice resulting from that deficient performance, meaning that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288. If appellate counsel abandons a nonfrivolous claim that was both "obvious" and "clearly

stronger" than the claim actually presented, the performance was deficient, unless the choice had a strategic justification. *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013). Counsel is "strongly presumed" to have provided adequate assistance. *Strickland*, 466 U.S. at 690. The *Strickland* standard is deferential: courts must defer to strategic decisions that comport with the full range of reasonable assistance, even if those decisions ultimately prove unsuccessful. *Id.*

Of course, this Court's review of the state court's application of *Strickland* is not *de novo*. This review is limited to whether the state appellate court's determination that Munson was not denied effective assistance of counsel "was contrary to, or involved an unreasonable application of" *Strickland*, as specified by § 2254(d). *Harrington v. Richter*, 131 S. Ct. 770, 788 (U.S. 2011). Munson does not prevail under this "doubly" deferential review. *Id.*

Courts are not required to evaluate the reasonableness of counsel's performance before analyzing *Strickland*'s prejudice prong: "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697; *see also Smith*, 528 U.S. at 286 n.14; *United States v. Berg*, 714 F.3d 490, 497 (7th Cir. 2013). In this vein, the state appellate court reviewed the merits of the claims that the petitioner argued should have been raised by his appellate counsel in order to determine whether he could demonstrate prejudice. *People v. Munson*, No. 3-08-0803, at 8 (citing *People v. Simms*, 192 Ill. 2d 348, 736 N.E.2d 1092, 1107 (2000)). That, too, was a reasonable application of *Strickland*. To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams*, 529 U.S. at 391. Absent denial of counsel altogether, courts observe a "strong presumption of reliability" of judicial proceedings. *Robbins*, 528 U.S. at 286. This

demanding standard is not met where the arguments that the petitioner would have had raised on appeal are meritless and therefore would not have changed the outcome.

At this point in the analysis, it is significant that each underlying argument that Munson wanted presented on appeal is a matter of state, not federal law. For a federal claim to have been fairly presented, both the operative facts and controlling law must have been placed before the state court so that it is "sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013) (citing *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)). Analysis of whether a federal claim has been fairly presented typically focuses on four factors: (1) whether the petitioner relied on federal cases that engage in constitutional analysis, (2) whether the petitioner relied on state cases that apply constitutional analysis to similar facts, (3) whether the petitioner framed the claims in terms so particular as to call to mind a specific constitutional right, and (4) whether the petition alleges a pattern of facts within the mainstream of constitutional litigation. *Id.*

The state appellate court first reviewed the merits of Munson's speedy trial claim. The Illinois Supreme Court has acknowledged that the state's speedy trial statute grants "an additional statutory right" that stands distinct from the rights guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution. *People v. Van Schoyck*, 232 Ill. 2d 330, 335, 904 N.E.2d 29, 31 (2009). Munson's argument to the state court was limited to the mathematical calculation of the state statutory period and the requirements of the state statute. *See* R. Ex. G 7, 15–28, Dkt. 11-2; R. Ex. H 10–24, Dkt. 11-3. It did not invoke the constitution or cite cases that

applied a constitutional analysis, and cannot otherwise be said to call to mind a federal claim.[3]

The state appellate court reasoned that Munson's claim failed as a matter of state law because fewer than 120 days of the statutory period had passed by the date that his trial began. *People v. Munson*, No. 3-08-0803, at 11 (applying 725 Ill. Comp. Stat. 5/103-5(a)). The court concluded that although the record is silent, Munson was present in court and did not object when a trial date outside the statutory period was set during the status hearing on August 21, 2003. *Id.* at 10. His lack of objection constituted agreement to the delay under 725 Ill. Comp. Stat. 5/103-5(a).[4]

Next, the court evaluated the evidentiary claim that Munson asserts should have been raised on appeal. This, too, was a state claim. Munson argued that the post-conviction trial court decision misapplied state law. R. Ex. H 25–31, Dkt. 11-3. While he cites two cases that addressed a similar issue under the Federal Rules of Evidence, the Federal Rules did not govern his state court trial. He did not invoke constitutional arguments or cases, and did not frame his claim as a general denial of a "fair trial" so as to call to mind a constitutional due process argument. The state appellate court concluded that his evidentiary claim was meritless because

---

[3] While Munson argued that the state speedy-trial statute should be liberally construed because "it enforces a constitutional right," R. Ex. H 23 (citing *People v. Swanson*, 322 Ill. App. 3d 339, 342, 751 N.E.2d 1182, 1184 (2001)), this is not a federal argument. The constitutional right referred to in *Swanson* is a state constitutional right, not federal. *See Swanson*, 322 Ill. App. 3d at 342, 751 N.E.2d at 1184 (citing *People v. Reimolds*, 92 Ill. 2d 101, 106, 440 N.E.2d 872, 874 (1982) (observing that the state speedy trial statute "implements the right to a speedy trial guaranteed by the Illinois Constitution")). And more significantly, the Illinois Supreme Court has since stated that the right secured by the state speedy-trial statute is an "additional" right to those guaranteed by the federal and state constitutions. *See Van Schoyck*, 232 Ill. 2d at 335, 904 N.E.2d at 31.

[4] As Munson points out, the state appellate court misquoted the text of 725 Ill. Comp. Stat. 5/103-5(a) by stating that it required an objection to be made "at [the] time" of a delay. That error, however, is not relevant to the court's ultimate factual determination that he did not object in writing or orally on the record. Notably absent from Munson's argument is any claim that he objected *at another time*, and this Court defers to the state court's determination that the otherwise silent record indicates that Munson did not object as the statute requires for one to avoid having been deemed to agree to a delay. 725 Ill. Comp. Stat. 5/103-5(a).

the trial court did not abuse its discretion under state law when it admitted "other crimes" evidence (regarding Munson's arrest on Grundy County drug charges two days before the charge in this case) to prove Munson's knowledge or intent. *People v. Munson*, No. 3-08-0803, at 13.

Finally, the court concluded that Munson's sentencing argument was meritless. In support of the sentencing claim that he wished had been made on appeal, Munson did not invoke the Eighth or Fourteenth Amendments, nor did he cite cases that relied on federal grounds.[5] The only federal constitutional claim Munson invoked in this portion of his brief is a repetition of the constitutional grounds for his ineffective assistance claim. R. Ex. H 32, Dkt. 11-3. Otherwise, he argued that the trial court abused its discretion by considering improper factors when sentencing Munson to forty years imprisonment. *Id.* at 31–38. The court, applying state law, concluded that this argument was meritless, too. *People v. Munson*, No. 3-08-0803, at 15.

In the claim before this Court, Munson attempts to collaterally attack the state court's analysis of these state claims by arguing that the court was wrong when it decided that they lacked merit in its *Strickland* prejudice analysis. As the Supreme Court has clearly stated, "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). A federal habeas court does not have the authority to review state-court interpretations of state law. *See Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) (citing *Estelle*, 502 U.S. at 67; *Lambert v. Davis*, 449 F.3d 774, 778–79 (7th Cir. 2006)). This is true even when a question of state law is "central"

---

[5] Munson cited *People v. Martin*, 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886 (1988), for the proposition that consideration of an improper aggravating factor warrants remand for resentencing. While in *Martin*, the Illinois Supreme Court mentioned generally that a sentence based on improper sentencing factors implicates a defendant's constitutional "fundamental right to liberty," *id.* (citing *Ingraham v. Wright*, 430 U.S. 651, 672 (1977)), the court went on to analyze and decide the propriety of the sentencing factors at issue in that case under state law. *Martin*'s citation to *Wright* is therefore insufficient to transpose Munson's sentencing argument that he would have had raised on appeal into a federal constitutional claim.

to a federal claim presented in a federal habeas petition. *See McCloud v. Deppisch*, 409 F.3d 869, 875 (7th Cir. 2005). This Court has no authority to decide whether the state appellate court errantly applied the state speedy trial statute, improperly denied his "other crimes" argument under state evidentiary procedural rules, or incorrectly interpreted Illinois state sentencing requirements. *See Williams v. Chrans*, 894 F.2d 928, 937 (7th Cir. 1990) (affirming denial of federal habeas petition in part on the grounds that a state court's interpretation of a state speedy trial claim is unreviewable by the federal habeas court); *Hough v. Anderson*, 272 F.3d 878, 899 (7th Cir. 2001) (tying ineffective assistance of counsel claim to admissibility of challenged evidence under state law and declining to review a state court determination on state evidentiary law); *Lilly v. Gilmore*, 988 F.2d 783, 789 (7th Cir. 1993) ("Because the admissibility of evidence in state court proceedings generally is a matter of state law, state court evidentiary rulings rarely will serve as grounds for granting a writ of habeas corpus."); *Corcoran v. Wilson*, 651 F.3d 611, 613 (7th Cir. 2011) (noting that error of state sentencing law does not warrant habeas relief absent a federal violation); *Koo v. McBride*, 124 F.3d 869, 876 (7th Cir. 1997) ("We have no authority to question the Indiana Supreme Court's interpretation of state [sentencing] law.").

To be precise, however, the fact that the state court ruled on the basis of state law does not itself answer the question that this Court is required to consider, namely, whether Munson's rights under the Sixth Amendment were violated by the decisions of his appellate counsel. *See McNary*, 708 F.3d at 920 (citing *Estelle*, 502 U.S. at 67–68). In this regard, a federal court's role is to determine "if there was a reasonable justification for the state court's decision." *McNary*, 708 F.3d at 920 (quoting *Harrington*, 131 S. Ct. at 790). The fact that the state court rejected the merits of his state law claims is thus dispositive as to this question too; Munson cannot demonstrate any reasonable probability that the result of his appeal would have differed had

meritless state claims been raised. *See McNary*, 708 F.3d at 921; *Warren v. Baenen*, 712 F.3d 1090, 1106 (7th Cir. 2013); *Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010); *see also Cummings v. Rednour*, 08 C 5723, 2010 WL 4340448, at *6 (N.D. Ill. Oct. 22, 2010).[6]

Finally, Munson's petition, liberally construed, can be read to challenge the state appellate court's decision on the grounds that it rested on an unreasonable determination of fact. 28 U.S.C. § 2254(d)(2). Here, the state appellate court determined that Munson did not object to the waiver of his speedy trial right during the status hearing on August 21, 2003, when a date outside the statutory period was set. This determination was key to the court's calculation of whether his speedy-trial right was violated, because absent an objection, the delay would be deemed agreed to by Munson. The writ may be granted for a claim that was addressed on the merits in state court if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Munson rests his argument that the state appellate court's determination was unreasonable on his assertion that during the August 6, 2004, evidentiary hearing on his post-trial motion, the state court trial judge took judicial notice of the fact that he made an affirmative statement demanding his speedy-trial right at the August 21, 2003, status hearing. Pet. 18–19, 21, 23, Dkt. 1. At the evidentiary hearing, Munson took the stand and had the following exchange with his attorney:

> MR. REILLY: . . . And when Mr. Bute was appointed as your attorney, you requested speedy trial at that time, too?
>
> [MUNSON]: Yes, I did.

---

[6] In other words, to the extent that Munson's petition can be read to assert that the state court's failure to correctly apply state law was serious enough an error to amount to a due process violation (*see, e.g.*, Pet. 24, Dkt. 1 (citing *Hicks v. Oklahoma*, 447 U.S. 343 (1980)), "a 'mere error of state law,'" such as those that Munson asserts occurred here, "is not a denial of due process." *Swarthout*, 131 S. Ct. at 863 (quoting *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982)).

> MR. REILLY: Once again, I ask the court to take judicial notice of
> the appearance filed by Mr. Bute.

R. Ex. M at R600, Dkt. 11-7. Mr. Bute was the public defender who first appeared on behalf of

Munson at the status hearing on August 21, 2003. Munson argues that this exchange establishes

that the trial court took judicial notice of the fact that Munson objected to the delay that would be

occasioned by the trial date outside the statutory period. On this basis, he argues that the state

appellate court was wrong to later conclude that he did not object, when it stated:

> On August 21, the public defender appeared and agreed to a trial
> date of October 27, a date outside the 120-day period. Defendant
> was present in court and did not object when the date was selected.
> Although he asserts that he made his initial demand for a speedy
> trial on this date, the record is silent. . . . Defendant's failure to
> object on the record tolled the speedy trial clock.

R. Ex. F 10, Dkt. 11-2.

In evaluating this finding, the Court inquires whether the state court's decision "rests

upon fact-finding that ignores the clear and convincing weight of the evidence." *See Goudy v.*

*Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010). To find in Munson's favor, the decision must

be "so inadequately supported by the record" as to be "arbitrary and therefore objectively

unreasonable." *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003) (citation omitted). This

evaluation must be conducted "in light of the evidence presented in the State court proceeding."

28 U.S.C. §2254(d)(2). While, as Munson asserts, the transcript from August 6, 2004, is

presumed correct, this Court disagrees with Munson's characterization of what it establishes. The

exchange excerpted above shows only that Munson's attorney requested that the court take

notice of Mr. Bute's appearance. It shows no ruling or indication of agreement by the court that

Munson objected during the status hearing on August 21, 2003. To the contrary, the transcript

shows that the trial court noted that Munson had requested continuances and that the necessary

substitution of public defenders mandated a continuance, and that the court had done everything

it could to ensure Munson's speedy trial rights. R. Ex. M R653–R654, Dkt. 11-7. The record before the state court on appeal therefore reasonably supports that court's conclusion that Munson did not object, and thus constructively agreed, to the delay under 725 Ill. Comp. Stat. 5/103-5(a). That is not to say that Munson's interpretation of this exchange is unreasonable, but only to say that he has failed to show that the state's court's finding was so inadequately supported as to be arbitrary and objectively unreasonable. Any doubt on this score must be resolved in favor of the state court. Munson did not show the court's determination was against the clear and convincing weight of the evidence, and therefore did not show that its ruling rested on an unreasonable determination of fact.

### B. Claim 2: Ineffective Assistance of Trial Counsel

Munson asserts that his trial counsel was ineffective for (1) failing to investigate and interview potential witnesses; and (2) placing Munson in a "bad light" in front of the jury by advising him to assert his Fifth Amendment right against self-incrimination while testifying. The Court will reach the merits of this claim, since it was raised in Munson's appeal and addressed by the Illinois Appellate Court, which also decided the claim on its merits.

On direct review, the state appellate court found that this claim failed under *Strickland*. As to *Strickland*'s performance prong, the court concluded that the trial attorney's performance did not fall below the objective standard of reasonableness. In particular, the court concluded that the decision not to call additional witnesses regarding Valinda's mental health was strategic and not unreasonable. It also credited the attorney's testimony at the post-trial evidentiary hearing that he had both advised Munson not to testify and reviewed the FBI report with which Munson was eventually impeached. The court cited the motions the attorney made, evidence and witnesses he presented, and his reasonable doubt strategy, and noted that Munson's insistence on

proceeding to trial despite his lawyer's short preparation time supported its conclusion that the steps counsel took to prepare for trial and present a meaningful defense were adequate. As to *Strickland*'s prejudice prong, the court stated that "[e]ven if Cohn had not read the report and had instructed defendant to testify, defendant could not prove that the result of the trial would have been different," citing specifically the fact that Munson's fingerprints had been found on the cocaine seized from his mother's garage. The court reasoned that even absent Munson's testimony, the evidence was sufficient to establish his guilt beyond a reasonable doubt, thereby concluding that Munson failed to show prejudice.

The state appellate court correctly identified and quoted *Strickland* as the governing standard for Munson's claim. As to *Strickland*'s performance prong, Munson fails in both of his arguments challenging the state court decision. The range of objectively reasonable performance is wide. The Supreme Court has instructed that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. The circumstances challenged must be reconstructed and evaluated from the attorney's perspective at the time the relevant decision was made. *Id.*

Munson's first argument for ineffective assistance challenges counsel's investigation and witness choice in several regards. On these points, the state opinion did not result in an unreasonable application of *Strickland*. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* Munson challenges counsel's decision not to call additional witnesses that would have testified regarding Valinda's mental illness and motive. The decision not to call a

witness "is sound 'if it is based on the attorney's determination that the testimony the witnesses would give might on balance harm rather than help the defendant.'" *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000) (quoting *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997)). At trial, counsel called three witnesses that testified regarding their prior interactions with Valinda that suggested that she was mentally unstable. In the state evidentiary hearing, counsel explained that he was concerned that calling additional witnesses to testify regarding Valinda's instability would have been irrelevant and could, on balance, have harmed Munson's case. R. Ex. M at R629–R630, Dkt. 11-7. He acted from the considered perspective that going too far in attacking Valinda "would have an adverse effect." *Id.* ("You don't look good by attacking a sick person by just showing how sick they are unless it's relevant."). That is not an objectively unreasonable concern; evidence of Valinda's mental instability did nothing to make it more plausible that the cocaine was hers, rather than his, and her mental instability could have cut against Munson by suggesting that she was not competent to run a drug business, making it more likely that the cocaine was his. The state court's determination that his decision not to call other witnesses was sound strategy was not an unreasonable application of *Strickland*.

Munson additionally challenges counsel's failure to interview witnesses who he claims saw Valinda with the cocaine. Pet. 50, Dkt. 1. Munson does not name these allegedly exculpatory witnesses in his petition or claim that he provided names of potential witnesses to his lawyer, and Cohn did not remember Munson giving him names of additional witnesses other than those who testified. *See* R. Ex. M at R602, Dkt. 11-7. At trial, the mechanic testified that he saw Valinda handle and transport the bag in which the cocaine was found. This shows that counsel investigated and called a witness in support of his strategy to instill reasonable doubt by showing that it could have been Valinda and not Michael Munson who possessed the drugs. On

the basis of the record before the state court, which shows that counsel investigated and called a witness who testified that he saw Valinda with the bag in which the cocaine was found, Munson cannot establish that the state court's conclusion was unreasonable at all, much less objectively so. It is difficult to imagine how counsel would have interviewed additional witnesses that were unnamed and otherwise unidentified.

Munson's second argument for ineffective assistance challenges counsel's decision to advise him to assert his Fifth Amendment right not to testify in front of the jury. The state appellate court credited the state trial judge's determination that counsel credibly testified that he had reviewed the FBI report and advised Munson not to testify, but that Munson chose to take the stand anyway. Munson does not attempt to establish that this determination was unreasonable; he instead emphasizes the distinction between his lawyer's act of advising him not to testify before the trial and his act of advising Munson to assert his Fifth Amendment right in front of the jury during trial. To Munson, the latter act so undermined his credibility in the eyes of the jury that it amounted to ineffective assistance.

Counsel's decisions were informed by the progression of events at trial. This particular act of counsel can be traced to Munson's testimony on cross-examination that he never used inositol powder as anything other than a dietary supplement. R. Ex. L. at R398, Dkt. 11-6. After Munson's direct examination, the government requested to discuss its planned impeachment of that statement outside the presence of the jury. The jury left the courtroom and Munson's attorney argued against allowing the government to impeach Munson with statements Munson had made in an FBI interview admitting that Harris had taught him how to cut cocaine with inositol. *Id.* at R399. Munson's attorney's objection centered on an argument that Munson had been promised at the time of the FBI interview that it would not be used against him;

proceedings were adjourned for the day while the judge reviewed the agent's notes for evidence of such a promise. *Id.* at R413, R417. The judge determined that Munson had not been promised immunity and permitted Munson to be impeached with his prior statements. Argument continued, mostly outside the presence of the jury, over the permissible scope of impeachment; Munson's attorney sought to limit any use of the interview that would impermissibly open up testimony regarding other crimes not probative to the charges in the case for which he was being tried. *See, e.g.*, *id.* at R447. When the government continued its cross-examination, the following exchange occurred:

> [THE STATE]: Mr. Munson, how many times before the incident we're talking about with the bag have you seen cocaine?
>
> MR. COHN: Your Honor, I'll object on the basis of the right of counsel and his right against self-incrimination not to answer that question.
>
> THE COURT: Overruled.
>
> MR. COHN: I'm advising him not to answer.
>
> THE COURT: Overruled.
>
> MR. COHN: He's not going to answer the question.
>
> THE COURT: I understand that.
>
> MR. COHN: But I want you to know that under those circumstances he's not answering the question.
>
> [THE STATE]: He is not going to answer the question how many times in the past he has seen cocaine?
>
> MR. COHN: That is correct. On my advice. On advice of counsel.
>
> THE COURT: I understand that.

*Id.* at R449–R450. Following this exchange, the jury was again dismissed and argument proceeded over whether Munson could refuse to answer the question given the fact that he had already taken the stand. Among other things, Munson's attorney expressed concern that Munson could be subject to federal charges and charges in Grundy County based on his anticipated answers. *Id.* at R454. The judge ordered Munson to answer the question or be in contempt of

court, then gave Munson time to consult with his attorney privately. When the trial reconvened, Munson again took the stand and answered that he had previously seen cocaine "many times." *Id.* at R457.

In the post-trial evidentiary hearing, counsel explained that he made the judgment call to interrupt questioning in the manner he did on the basis of the rulings the judge made as questioning progressed and during argument heard out of the presence of the jury. R. Ex. M R638, R642, Dkt. 11-7 ("I have never done it before. I thought it was essential in this case because of the rulings of the Judge . . . and the action of the prosecutor."); R. Ex. L at R398– R417, Dkt. 11-6. As the transcript of the proceedings show, he was concerned with how much of the FBI interview would be allowed in on cross-examination, the scope of the answers that Munson would be required to give, and Munson's potential exposure to additional charges. While it may have affected Munson's credibility in the eyes of the jury for his attorney to advise him not to answer questions, once he chose to testify as he did, he would have had to give an incriminating answer no matter what his attorney did when he was impeached with his prior statement to the FBI. The distinction that Munson emphasizes is therefore one without a difference: if invoking his Fifth Amendment right in front of the jury prejudiced him, the result would have been no different had he answered the question truthfully—as he ultimately did. Under either scenario, the jury would have learned that Munson was not a stranger to cocaine. It is that eventual, inevitable incriminating fact that undermined his credibility with the jury, not the manner by which the jury came to infer, or learn, that fact. If anything, counsel's interruption (and subsequent advocacy outside the presence of the jury), helped Munson minimize the damage from his own choice to take the stand, testify, and misrepresent his past. The state

appellate court's performance ruling was therefore neither contrary to nor an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of fact.

### C. Claim 3: Fourth Amendment Violation

Finally, Munson asserts that the state appellate court erred in affirming the denial of his motion to suppress on direct appeal. Munson filed a motion to suppress that the trial court denied after a hearing. R. Ex. N, Dkt. 11-7. The state appellate court affirmed the trial court's denial. R. Ex. A 10–12, Dkt. 11-1. Munson appears, however, to have omitted this claim from his petition to the Illinois Supreme Court, which was also denied. R. Ex. D, Dkt. 11-2. The state has not invoked procedural default as a result, however, so the Court considers the claim. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).

Notwithstanding its waiver of procedural default, the State correctly argues that this claim is barred by *Stone v. Powell*, 428 U.S. 465, 494 (1976), which established that the exclusionary rule may not be the basis for federal habeas relief where the state provided a full and fair opportunity to litigate the Fourth Amendment claim. Indeed, *Stone* bars a federal habeas court from reviewing the merits of a petitioner's Fourth Amendment claim unless the petitioner establishes that he "was not granted a full and fair hearing." *Monroe v. Davis*, 712 F.3d 1106, 1113 (7th Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007) (collecting cases in which federal habeas petitioners established that they were denied full and fair hearings and thus were entitled to review of the merits of their Fourth Amendment claims)). So long as the mechanism given a litigant to litigate a Fourth Amendment claim is not a sham, a Fourth Amendment claim is not cognizable in federal habeas proceedings. *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). In other words, "'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result." *Id.*

Munson argues that he clears the *Stone* bar because his attorney on appeal withdrew after filing her brief and did not know what happened in the case after withdrawing. Pet. 58–61, Dkt. 1. Counsel raised the issue in the appellate brief filed on April 14, 2006. R. Ex. B 32–36, Dkt. 11-1. The state appellate court discussed and denied the claim in its subsequent decision. R. Ex. A 10–12, Dkt. 11-1. There appears to have been misunderstandings between Munson and his State Appellate Defender about when she stopped representing him, *see* Pet. Exs. 8, 8A, Dkt. 1, but such misunderstandings do not render the state's mechanism for evaluating his claim insufficient, especially since the brief had already been filed on his behalf, making the same claim that he asserts here. Munson also argues that "the appellate court failed to apply the proper constitutional case law to the facts of this case." Pet. 61, Dkt. 1. He does not argue that he was prevented from presenting the proper law during the course of his appeal, nor does he more fully identify in what way the court erred. As the Seventh Circuit has stated, "[a]bsent a subversion of the hearing process, [a federal habeas court] will not examine whether the judge got the decision right." *Cabrera*, 324 F.3d at 531. There is no indication here that the court subverted or was otherwise careless with Munson's right to present his claim. Consequently, the claim fails.

## D. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A state prisoner is required to obtain a certificate of appealability (from either the district court or from the appellate court) before the court of appeals has jurisdiction to rule on the merit of habeas appeals. 28 U.S.C. § 2253(c)(1); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003). A certificate should issue when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to satisfy this

standard, "[a] prisoner must show that reasonable jurists would find the district court's assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong." *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court believes that reasonable jurists would not debate its conclusion that Munson's habeas petition fails. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

\*　　　\*　　　\*

For the reasons stated above, the Court denies Munson's petition for writ of habeas corpus and declines to issue a certificate of appealability.

Date: March 24, 2014

John J. Tharp, Jr.
United States District Judge